J. Kirby Reppell and Marcella R. Reppell v. Commissioner.
Reppell v. Commissioner
Docket No. 78023.
United States Tax Court
T.C. Memo 1961-53; 1961 Tax Ct. Memo LEXIS 286; 20 T.C.M. (CCH) 295; T.C.M. (RIA) 61053; February 28, 1961
*286 Petitioner J. Kirby Reppell has been for a good many years engaged in the business of purchasing real estate subdivisions and constructing on the lots residential property and selling these residences and lots to customers. In 1948, he purchased a subdivision near St. Louis, Missouri, known as Salem Hills. He built numerous houses on these lots and sold them and returned the gain from them as ordinary income. In this Salem Hill subdivision there were certain lots which fronted on Manchester Road, one of the main Missouri highways out of St. Louis. Petitioner held these particular lots for investment and not primarily for sale to customers in the ordinary course of his business. In 1955, he sold 5 of these lots without any sales effort on his part at a good profit and returned the gain from the sale as long-term capital gain. The Commissioner has determined that the gain was ordinary income. Held, the lots in question were being held by petitioner at the time of sale for investment purposes and not primarily for sale to customers in the ordinary course of his business, and the gain from such sale was long-term capital gain. John Grossman, Esq., 722 Chestnut St., St. Louis, Mo., for the petitioners. Claude R. Sanders, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in income tax of petitioners for the year 1955 of $13,034.81. The deficiency is due to two adjustments made to the net income as reported on the joint return filed by petitioners. The first adjustment is not in issue. The second adjustment was to determine that gain resulting from the sale by petitioner J. Kirby Reppell of certain real property which he owned was ordinary income and not long-term capital gain as reported by petitioners. That adjustment is explained by respondent *288 in the deficiency notice as follows: (b) The profit on the sale of land reported as capital gain on the return is held to have resulted from the disposition of assets held primarily for sale to customers in the ordinary course of business. Accordingly, the gain reported on return is included here as ordinary income in the amount of $42,125.21 in accordance with Section 1237 of the Internal Revenue Code of 1954. Petitioners assign error as to the foregoing adjustment made by respondent. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioners are individuals residing in Rock Hill, Missouri, and are husband and wife. Their joint income tax return for the year 1955 was filed with the district director of internal revenue at St. Louis. Petitioner J. Kirby Reppell, hereinafter referred to as petitioner, is 66 years of age and was originally a bricklayer by occupation. Petitioner purchased Salem Hills subdivision near St. Louis in 1948, which contained in excess of 29 acres and for which he paid approximately $40,000 or $45,000. Petitioner had the property surveyed at the time of purchase; it *289 had been subdivided before he purchased it. Among the lots which petitioner purchased in the Salem Hill subdivision were lots 67, 68, 69, 70, and 71. These lots had frontage on Manchester Road, a major highway running out of St. Louis. These lots were purchased by petitioner for investment purposes and not primarily for sale to customers in the ordinary course of petitioner's trade or business. These lots were fully developed, water, sewerage, and other improvements were on them at the time petitioner purchased them along with the rest of Salem Hills subdivision. Manchester Road runs generally east and west and Salem Hills is north of Manchester Road; there is no part of Salem Hills located on the south side of Manchester Road. At no time did petitioner ever offer for sale his Manchester Road frontage such as lots 67, 68, 69, 70, and 71; he never put a sign on the properties offering them for sale; he never advertised these lots as being for sale; and he never approached anyone with the idea in mind of selling said property. Petitioner, at the time of purchase in 1948, did not intend to sell any of the Manchester Road frontage. His plans were to create a shopping district similar *290 to the district just west of the subdivision. By the term "shopping district" petitioner meant to create a business where he, by either leasing the land or by building buildings and leasing them for an income, would have a steady and sizable income. Petitioner operated his business of building and selling houses for residential purposes from his home. Inasmuch as most of the time he was on the outside with his employees building the houses, his wife Marcella answered the telephone and business inquiries in general. Petitioner gave Marcella specific instructions that if anyone inquired at any time about the lots which he owned in Salem Hills subdivision which had a frontage on Manchester Road, including lots 67, 68, 69, 70, and 71, she should tell them that they were not for sale. Marcella carried out these instructions and told various inquirers that these lots were not for sale. On October 18, 1955, petitioner, after being approached by the buyer and without any sales effort on his part, entered into a "Sales Contract - Uniform Contract" with Shirley Katz by the terms of which petitioner agreed to and did sell lots 67, 68, 69, 70, and 71 of Salem Hills to Shirley, or her assigns, *291 for $48,000. On November 29, 1955, petitioners executed and delivered their warranty deed to lots 67, 68, 69, 70, and 71 of Salem Hills and conveyed same to the assignees of Shirley who were acting for and on behalf of 905 Liquor Stores, Inc. Petitioners at the present time still hold lots 1, 2, 63, 64, and 65 in the Salem Hills subdivision as an investment; they are not for sale now, petitioner has not attempted to sell them and is leasing some of them for a profitable rental. In their joint income tax return for 1955 petitioners reported: Receipts from houses sold
$256,779.24
Cost of houses sold
226,524.40
Gross profit on houses sold
$ 30,254.84 This gross profit from these houses sold was reported by petitioners as ordinary income and is not in dispute in this proceeding. In 1955, petitioners realized gain in the amount of $42,125.21 from the sale of lots 67, 68, 69, 70, and 71 of Salem Hills subdivision. On their 1955 income tax return they reported the gain from the aforesaid sale as long-term capital gain in the amount of $21,060.60. As has already been explained herein, respondent disallowed this treatment of the gain from the transaction as long-term *292 capital gain and determined that the gain was ordinary income. Opinion BLACK, Judge: We have but one issue to decide in this proceeding and that is whether the gain realized from the sale of 5 lots which petitioners owned in the Salem Hills subdivision should be treated under the applicable statute as long-term capital gain, as petitioners contend, or whether such gain should be treated as ordinary income, as the Commissioner contends. There is no dispute as to the amount of gain which petitioners realized on the transaction in question. In 1955, as has been stated in our Findings of Fact, petitioner sold 5 lots fronting on Manchester Road, a main highway out of St. Louis. Petitioner held the Manchester Road frontage as an investment for future sale at a profit or the production of rental income. Whether property was held primarily for sale to customers in the ordinary course of a trade or business is a question of fact. Dougherty v. Commissioner, 216 F. 2d 110 (C.A. 6, 1954). We think petitioner has clearly established by the evidence that the 5 lots in question were acquired *293 by him and were being held for investment purposes and not primarily for sale to customers in the ordinary course of his business. The applicable statute, section 1221, Internal Revenue Code of 1954, is printed in the margin. [1] The Commissioner in his deficiency notice determined that the profits from the sale in question were ordinary income under the provisions of section 1237, 1954 Code. He now concedes that that section has no application under the facts of this case and now relies on section 1221, 1954 Code. Petitioner testified at length at the trial of this proceeding *294 and also several other witnesses testified in his behalf and this testimony convinces us that the lots in question were held for investment purposes and not primarily for sale to customers in the ordinary course of petitioner's business. Respondent had three witnesses who testified but so far as we can see their testimony in no way rebuts the testimony introduced by petitioner. Petitioner concedes that for many years he has been in the business of building and selling residential property on subdivision lots which he had acquired for that purpose and that his profits from these sales were ordinary income and that he so treated them on his income tax returns. As a matter of fact, in the taxable year which we have before us, petitioner made 12 such sales which aggregated $256,779.24, as shown in our Findings of Fact, and petitioners returned the net income from these sales as ordinary income. That income is not in question here. But it is the contention of petitioner that the lots in the Salem Hills subdivision which fronted on Manchester Road, one of the main Missouri highways out of St. Louis, were not being held for sale but were held for investment purposes, and, as we have already *295 stated, petitioner has established to our satisfaction that this contention is true. Respondent, in effect, contends that because petitioner was in the business of building and selling houses in subdivisions which he had acquired, it must necessarily follow that all the lots which petitioner had acquired and owned in Salem Hills subdivision were being held primarily for sale to customers in the ordinary course of petitioner's business. We do not think this necessarily follows at all. See Nelson A. Farry, 13 T.C. 8 (1949), in which, among other things, we said: It is true, of course, that petitioner was in the business of developing two subdivisions in the city of Dallas, namely, Cedar Crest and Clarendon Heights. He constructed houses on these properties and sold them at a profit. To this extent he was a dealer in real estate. That he does not deny and he has returned all of his gains from the sale of these Cedar Crest and Clarendon Heights properties as ordinary income. But a dealer can also be an investor, and, where the facts show clearly that the investment property is *296 owned and held primarily as an investment for revenue and speculation, it is classed as a capital asset and not property held "primarily for sale to customers in the ordinary course of trade or business." See E. Everett Van Tuyl, 12 T.C. 900, and Carl Marks & Co., 12 T.C. 1196. On the facts, we sustain the petitioner on the issue presented for our decision. We likewise sustain petitioners on this issue here. Because of an adjustment made by respondent which petitioners have not contested, Decision will be entered under Rule 50. Footnotes
1. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;↩